| | |
|---|---|
| **IN THE MATTER OF ARBITRATION:** | **OPINION** |
| **AT&T/SOUTHWESTERN BELL** | **AND** |
| **AND** | **AWARD** |
| | **JANUARY 19, 2018** |
| **COMMUNICATION WORKERS OF AMERICA, LOCAL 6132** | **A.A.A. CASE NO. 01-15-0005-8294** |

**Arbitrator**: Samuel J. Nicholas, Jr.
**Representatives**: Company – Chris Bourgeacq, Esq.
             Union – Matt Holder, Esq.

## OPINION

### I.

Southwestern Bell Telephone Company ("Company"), ("Management") and the Communication Workers of America, Local 6132 ("Union") bring on to arbitration the instant grievance filed by the Union on behalf of its Bargaining Unit Employees ("BUEs"), which alleges that Company improperly trained and/or assigned Premises Technicians to perform a specific task that should have been assigned to higher grade technicians: splicing directly into distribution cables to provide television service via internet protocol.

The grievance claims that the Company's actions violated the Parties' 2013 Negotiating Report, p. 15; paragraph 8(D)(1). The grievance states the following:

> "This grievance is to challenge the Company's training and/or assigning the work of Cable Splicing Technicians and/or Customers Service Technicians to Premises Technicians, on or about April 6, 2015 in Austin, Tx. Specifically, Premises Technicians are being trained and/or assigned to use a mechanical splice to join two bare fibers together for connectivity to the house. The Premises Technician strips fiber, cleans fiber, cleaves fiber, places the bare end of the fiber into a mechanical connector, locks them in place, and then forms a splice into the splice tray. The training and/or assignment of this work violates the 2013 Negotiating Report, p. 15, paragraph 8(D)(1)."[1]

---

[1] Joint Exhibit 7

A step one grievance meeting was held between the Union and Management on July 15, 2016, wherein the Union voiced its subject concerns. The grievance was denied and rejected during the meeting.

In light of the parties' failure to resolve the matter during the preliminary steps of the grievance procedure, your Arbitrator was mutually selected as the arbitrator of record in accordance with Article IV of the Collective Bargaining Agreement ("Agreement") and entrusted to issue a fair and binding decision based upon the merits of the case.

On October 18, 2017, an arbitration hearing was held in Austin, Texas, wherein the parties submitted documentary evidence and witness testimony. Upon conclusion of the hearings, it was determined that the parties would submit post-hearing briefs, which were received on January 3, 2018. Thus, upon the Arbitrator' receipt of the briefs, the case record was deemed closed and the matter prime for award.

## II.

The issue, when framed in the form of a question, asks: did the Company's decision to train and assign Premises Technicians violate the parties' 2013 Settlement Agreement, specifically Page 15; Paragraph 8(D)(1)? If it is determined that a violation did indeed occur, what shall be deemed the proper remedy?

## III.

The following policy provisions are deemed relevant to the instant dispute:

**2009 SETTLEMENT AGREEMENT:**
*       *       *

D.    Appendix J is amended as follows:
1.    In addition to the current job duties performed by Premises Technicians, the Company intends to:
a.    Assign Premises Technicians all work from and including the Serving Terminal up to and including the customer premises for IP enabled products and services.
b.    Assign Premises Technicians all work at or in the customer premises for all services regardless of the technology or equipment involved except:

2

- Installation and maintenance work TDM enabled voice service (POTS), including station and inside wire.
- Initial installation work for ATM enabled DSL service.[2]

*      *      *

## 2013 SETTLEMENT AGREEMENT

*      *      *

D.  Appendix J is renewed and amended, effective April 7 2013 through April 8, 2017 as follows:
I.  In addition to the current job duties performed by the Premises Technicians, the Company intends to:
a.  Assign Premises Technicians to cut/transfer cable pairs (cable repair work will continue to be assigned to Group 1 Craft)
b.  Assign Premises Technicians to place bridge tap terminators[3]

*      *      *

## COLLECTIVE BARGAINING AGREEMENT

*      *      *

## Article IV – Arbitration

*      *      *

## Section 3

The Arbitrator shall be confined to the subjects submitted for decision, and may in no event, as a part of any such decision, impose upon either party any obligation to arbitrate on any subjects which have not herein been agreed upon as subjects for arbitration; nor may the arbitrator, as a part of any such decision, effect reformation of the contract, or of any of the provision thereof.

*      *      *

**IV.**

The parties' positions have been summarized as follows:

<u>Union</u>

The Union filed the grievance in light of Company's 2015 decision to train and require Premises Technicians to splice directly into the distribution cable.  It is the Union's inherent position that splicing into a distribution cable is work that should be reserved for Group 1 Craft positions such as Customer Service Technicians or Cable Splicers.

According to the Union, neither the 2009 nor the 2013 Settlement Agreement references a requirement mandating that Premise Technicians splice directly into distribution cables.  As a matter of past practice, the Union suggests that Premise Technicians, prior to 2015, have always been permitted to establish connectivity via a binding post or connectors that had been

---

[2] Union Exhibit 12, p. 15
[3] Union 5, p. 15

3

prefabricated, but never by splicing into a distribution cable. As previously stated, this specific task had always been reserved for Group 1 Craft employees.

It is the Union's contention that any and all changes to the specific job requirements of Premises Technicians have always been subjected to collective bargaining, and any unilateral attempt to change said description runs afoul with an established past practice. Union supports its contention by way of reminding the Arbitrator that during the hearing, two Union witnesses, CWA Area Director Mike Neumann and bargaining committee member Glynne Stanley, testified to this claim, and a Company witness, Rob Zurovec, acknowledged in the affirmative that this was indeed the practice. Therefore, the Union argues that it was understood that this was the proper protocol for any and all changes.

In 2013 two changes were made to the job description of the Premises Technician. The changes called for Premises Technicians to perform cuts and transfers of cable and placing bridge tap terminators. The changes were clearly documented and included in the official job description of the subject classification of worker. As such, the Union asserts that any attempted variance to circumvent this practice is in violation of the terms of the Settlement Agreement.

It is the Union's stance that the inclusion of the phrase, "All work from and including the Serving Terminal," as adopted into the 2009 Settlement Agreement, was not included for the purpose of requiring Premises Technicians to splice directly into the distribution cable. Rather, the Union implored that the phrase in question pertains to providing connectivity to a customer(s) via using prefabricated connectors and binding posts. Furthermore, prior to 2015, Premises Technicians were not required to splice into the distribution cable; thus, the Union argues that this variance alone proves that the Company unilaterally changed the job

4

requirements of the Premises Technician and without consulting the Union through the proper channels.

In conclusion, the Union asks that in light of the Company's violation of the parameters set forth by the 2013 Settlement Agreement, the Arbitrator order Management to cease and desist from assigning Premises Technicians to splice into distribution cables, due to the fact that this is work reserved for Group 1 Craft positions. Moreover, the Union urges the Arbitrator to remand the parties to the bargaining table to resolve the issue at hand.

Company

The Company is of the inherent position that the language crafted and agreed upon by both parties that was included on Page 15; Paragraph 8(D)(1) of the 2009 Settlement Agreement, which requires Premises Technicians to perform "all work" is applicable to splicing fiber.

The Company contends that the grievance before the Arbitrator pertains to only a Premises Technician's ability to perform cable work at the serving terminal. Furthermore, in light of the specific language found in the Settlement Agreement, which requires all Premises Technicians to perform "all work from and including the serving terminal," the Company contends that the assignment of splicing duties to Premises Technicians was appropriate and did not exceed the scope of the subject provisional language.[4] The Company insists that the parties' bargaining history laid the groundwork for Management to assign certain responsibilities to Premises Technicians as a result of the 2009 amendment to the 2009 Settlement Agreement.

The Union attempted to establish static job requirements for Premises Technicians, according to Assistant Vice President of Labor Relations Robert Zurovec, who testified at the arbitration hearing. Mr. Zurovec stated that the Union attempted to bargain for specific duties

---

[4] Union Exhibit 5, p. 15

5

CWA v. SWBT et al Joint Record 0885

for the Premises Technicians, yet failed to provide any of the proposed requirements.[5] Mr. Zurovec went on to attest that it was Management's position during these negotiations that the Company favored a more inclusive mandate, which would allow the Company to offer its customer a more functional customer experience.[6] In detail, Mr. Zurovec stated the following:

> "Our approach in 2009 from the outset was that we - - again, in pursuit of providing a superior customer service, what we had found from 2006 leading into 2009 is that our ability to provide great service was being somewhat hampered by the fact that we were having to send multiple technicians to customer premises in order for an order to be fulfilled.  So we had customers in some cases enduring two, three, maybe even four dispatches from four different technicians because of some of those limitations that we had on the perm tech."[7]

In addition, the Union referenced specifically made mention to fiber related work when proposing that specific duties be required; thus, the Company argues that it is evident that prior to the implementation of the assignment of splicing duties inside the serving terminal in April 2015, both Management and Union were of the frame of mind that Premises Technicians could potentially perform "all work" inside the serving terminal.

In an attempt to refute the Union's assertion that Management's actions violated the subject Agreement, Company calls attention to the testimony of Union witness Glynne Stanley, who was asked during the hearing if distribution cable is *distinct* from the serving terminal, and Mr. Stanley replied by stating, "Well, it's part of the serving terminal."[8]  In Company's eyes, this offering constitutes a clear acknowledgement that requiring a Premises Technician to splice fiber inside the serving terminal is in line with the additions to the amended 2009 Settlement Agreement, which requires Premises Technicians to perform "all work from and including the serving terminal."[9]

---

[5] Transcript, p. 119
[6] *Id.* at p. 120
[7] *Id.*
[8] *Id.* at p.163
[9] Union Exhibit 12, p. 15

6

In closing, the Company holds fast to the adamant position that the Union has failed to establish that a preponderance of the evidence reveals that Management's actions violated the subject language of the parties' Settlement Agreement.

## V.

The parties have brought forth a grievance concerning the limitations regarding the job duties assigned to a job classification. The Union alleges that as a result of Management's actions, the implied terms of the Settlement Agreement were violated, as well as an established practice concerning the method in which the job duties associated with a Premises Technician are amended. To be sure, as the charging party, Union is saddled with the inherent burden of establishing sufficient cause to find that said allegations have occurred. Accordingly, the Arbitrator must reach a determination on whether Management's April 2015 decision to train/and require all Premises Technicians to splice into the distribution cable violated the allegations that support the subject grievance.

The language in question states, "In addition to the current job duties performed by Premises Technicians, the Company intends to: Assign Premises Technicians all work from and including the Serving Terminal up to and including  the customer premises for IP enabled products and services."[10] It is indisputable that the language crafted and agreed to by both Management and Union, as included into the 2009 Settlement Agreement, affords the Company strong footing on its discretionary ability to require a Premises Technician to perform unspecified tasks. However, the word unspecified has significant meaning in relation to the matter at hand.

The testimony offered at the hearing, despite Company's attempt to convey that Premises Technicians have been in the past required to perform splicing duties, illustrated that an

---

[10] *Id.*

7

employee assigned to a Group 1 Craft position performed the physical act of splicing into the distribution cable, prior to April 2015. Moreover, of the nineteen "general essential functions" associated with the Premises Technician position, absent is the act of splicing from any and all of the listed functions.[11] On the other hand, the Customer Service Technician job description, which is the Group 1 Craft position that has in the past often been required to perform the splicing duties that the Company now strives to make certain that Premises Technicians perform, lists twelve "general essential functions" associated with the mandated requirements of the position and fourteen "essential functions."[12] One essential function that the Arbitrator finds highly relevant to the basis of the grievance demands that the employee performs the following:

> Splices wires by twisting and soldering or by joining with connectors and splicing tool in aerial, underground, buried, submarine and building; multiple conductor cable, fiber optic and other wire; terminates wires on various types of equipment by soldering or mechanical wire wrapped methods; covers conductors with insulating material.[13]

The requirement pertaining to splicing is absent from the Premises Technician job description. An argument can be made, however, that Premises Technicians, if required to perform the splicing duties associated with those of Customer Service Technicians, would be compensated for performing said tasks. But this issue is not before the Arbitrator. I must discern whether a violation of the Agreement occurred or an established past practice thereon.

The Union alleges that the Company violated the Settlement Agreement by requiring Premises Technicians to perform specific duties that have been reserved for Cable Splicing Technicians or Customer Service Technicians. Yet, no language in the Agreement restricts or forbids Management from making said changes. Thus, *on its face*, the Union's assertion that Management's actions violated the provisional language of the Settlement Agreement falls short. But what did exist, as reflected in the Records, is a past practice between Management and the

---

[11] Company Exhibit 5
[12] Union Exhibit 3
[13] *Id.*

8

Union concerning the method on how additional job duties are applied to the Premises
Technician position.

Union Exhibit 9, a Memorandum of Agreement concerning Premises Technicians, was
adopted into the parties Labor Agreement. The job description is listed on the last page.
Nowhere does it reference the expectation that a Premises Technician must be able to splice
cable, nor should it, because the subject requirement was not introduced until 2015.
Nevertheless, Union Exhibit 4 reveals the established method in which the parties utilize to make
changes to a Premises Technician's job duties. Changes to the Premises Technician Job duties,
as Union Counsel emphatically attempted to stress to the Arbitrator during the arbitration
proceedings, and the Company failed to adequately refute, has always been a matter subject to
negotiations. Thus, Management's attempt to include the subject changes, which are enumerated
in Union Exhibit 4, into the subsequent Settlement Agreement, did not coincide with the practice
utilized in the past by both parties concerning changes to the Premises Technician job duties.

Management's right to manage the Company with proper discretion as it sees fit is its
inherent prerogative and making changes to job descriptions of different positions in most
circumstances would be appropriate, absent any provisional language that restricts such changes
on a unilateral basis. But at the heart of the matter before this Arbitrator belies an unspoken
protocol that the parties have long shared, which serves as a formal directive, mandating that any
and all changes to the job description of the Premises Technician be collectively bargained, as
has been the method employed in the past and that has effectively bound the parties' actions
relative to the implementation of changes to job duties.

Your Arbitrator is quite aware that he is forced to balance the given practice with
Management's right to operate in a manner that supports the mission of the Company. Absent a

9

CWA v. SWBT et al Joint Record 0889

clear practice that the parties have chosen to abide by and despite the nature of the proposed changes and the additional requirement associated with the proposed changes, I would be inclined to find that no violation of the Agreement occurred. However, in light of the aforementioned practice, and the manner in which it has been observed in the past, your Arbitrator holds that Company's decision to unilaterally apply new job duties without consulting the bargaining unit marked a violation of the long-standing practice that the parties share.

Both parties have advanced the argument that the opposing faction is attempting to gain through arbitration what it was unable to attain through negotiations. But on balance, here the Company is attempting to implement a change that has traditionally been negotiated by the parties. Thus, the notion that Management possesses the authority to circumvent this practice because it is unwilling to bargain for its acceptance cannot be sanctioned.

Finally, as a matter of recourse, your Arbitrator remands the parties to the bargaining table for the purpose of negotiating the terms and conditions of the changes to the job duties that Management has attempted to make. Until such time that an agreement has been reached, the Company must respect the established protocol that has been adopted by the parties concerning how Premises Technician job duties are to be altered and not assign or expect Premises Technicians to perform any of the proposed changes associated with splicing directly into the distribution cable. Thus, in light of the Company's failure to abide by proper protocol, Management must cease and desist from its disputed action until the parties reach an agreement in relation to any and all changes to the Premises Technician job duties. Accordingly, the following Award is made:

10

VI.

## AWARD

The grievance is sustained.

The Arbitrator shall retain jurisdiction of the award until it has been fully implemented.

Samuel J. Nicholas, Jr.
Arbitrator
January 19, 2018

11

CWA v. SWBT et al Joint Record 0891