# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO | § § § | |
| V. | § § | A-18-CV-271 LY |
| SOUTHWESTERN BELL TELEPHONE COMPANY; et al. | § § § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are Defendants' Motion for Summary Judgment on Plaintiff's Complaint and Defendants' Counterclaim (Dkt. No. 23); Plaintiff's Motion for Summary Judgment (Dkt. No. 24); and the various Response and Reply briefs. The District Court referred the above-motions to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B), FED. R. CIV. P. 72, and Rule 1(d) of Appendix C of the Local Court Rules.

## I. GENERAL BACKGROUND

Communications Workers of America, AFL-CIO ("the Union") and Southwestern Bell Telephone Company have had a decades-long bargaining relationship and are parties to a collective bargaining agreement, the current 2013 version of which is in effect through April 10, 2021 ("CBA"). The CBA contains an arbitration clause, as well as a grievance procedure the Union must follow in presenting to and discussing employee grievances with Southwestern Bell. If after following all of the grievance procedures the parties have not resolved a dispute, then the matter must be submitted to arbitration. The CBA arbitration clause incorporates the American Arbitration Association's Rules for Labor Arbitration to govern arbitration between the parties.

During Southwestern Bell and the Union's collective bargaining in 2009, the parties addressed the scope of work Southwestern Bell could assign to certain outside employees called "Premises Technicians" agreeing to the following language in the "2009 Settlement Agreement" that contains all changes made during bargaining:

1. In addition to the current job duties performed by Premises Technicians, the Company intends to:

   a. Assign Premises Technicians all work from and including the Serving Terminal[1] up to and including the customer premises for IP enabled products and services.

Dkt. No. 22-14 (Appendix J to the CBA). The parties have not modified the above-language and it is therefore still in effect. The job description for Premises Technicians was also modified after the 2009 negotiations to include the ability of Southwestern Bell to assign Premises Technicians "all work" at the serving terminal, tracking the language of the Agreement. Dkt. No. 23 at p. 3.

In 2015, Southwestern Bell began to train and assign Premise Technicians to splice fiber optic cables at serving terminals in Austin, Texas. Dkt. No. 22-6. Thereafter, the Union filed a formal grievance alleging that Southwestern Bell improperly trained and/or assigned Premises Technicians to perform a specific task that should have been assigned to higher grade technicians. Specifically, the grievance stated the following:

> This grievance is to challenge the Company's training and/or assigning the work of Cable Splicing Technicians and/or Customer Service Technicians to Premises Technicians, on or about April 6, 2015 in Austin,TX. Specifically, Premises Technicians are being trained and/or assigned to use a mechanical splice to join two bare fibers together for connectivity to the house. The Premises Technician strips fiber, cleans fiber, cleaves fiber, places the bare ends of the fiber into a mechanical connector, locks them in place, and then forms a splice into the splice tray. The

---

[1]The Serving Terminal is typically the green pedestal or cylinder located in the corner of a customer's yard. Dkt. No. 22-6.

training and/or assignment of this work violates the 2013 Negotiating Report, p. 15, paragraph 8(D)(1).

Dkt. No. 22-3 at 7. After the parties failed to settle the dispute in the grievance process, the Union requested a hearing before an arbitrator.

In October 2017, the parties had a hearing before an arbitrator. At the hearing, the Union introduced Union Exhibit 4, over Southwestern Bell's objection, which summarized an agreement reached between AT&T's Midwest Region (not Southwestern Bell) and a different district governed by a different CBA, that addressed express limitations those parties had reached on their Premises Technicians' ability to perform fiber splicing work. Because Union Exhibit 4 involved different parties, it was irrelevant to Southwestern Bell's collective bargaining history and to the dispute between the Union and Southwestern Bell. Instead, the language of the CBA at issue in the parties' dispute permitted the Southwestern Bell to assign Premises Technicians "*all work* from and including the Serving Terminal up to and including the customer premises for IP enabled products and services." Dkt. No. 22-14.

The Arbitrator issued an Opinion and Award finding that Southwestern Bell violated the CBA, relying on Union Exhibit 4. *See* Dkt. No. 22-38 ("January Award"). While the Arbitrator noted that no language in the CBA precluded Premises Technicians from performing splicing work, he found that Union Exhibit 4 reflected Southwestern Bell's and the Union's bargaining history on Premises Technicians—even though the exhibit related to a different group of parties and a different CBA. His award stated:

> Nevertheless, Union Exhibit 4 reveals the established method in which the parties utilize to make changes to a Premises Technician's job duties. Changes to the Premises Technician Job duties, as Union Counsel emphatically attempted to stress to the Arbitrator during the arbitration proceedings, and the Company failed to

3

> adequately refute, has always been a matter subject to negotiations. Thus, Management's attempt to include the subject changes, which are enumerated in Union Exhibit 4, into the subsequent Settlement Agreement, did not coincide with the practice utilized in the past by both parties concerning changes to the Premises Technician job duties.

Dkt. No. 22-38 at 9. The Arbitrator concluded that the "Company's decision to unilaterally apply new job duties without consulting the bargaining unit marked a violation of the long-standing practice that the parties share." Dkt. No. 22-38 at 10.

Upon receiving the award, Southwestern Bell filed a Request for Reconsideration, pursuant to AAA Labor Arbitration Rule 40, pointing out that the Arbitrator mistakenly relied on Exhibit 4 to find a violation of the Agreement. Dkt. No. 22-39. The Union objected to the motion, arguing that Rule 40 only permits the correction of "clerical, typographical, technical or computational errors in the award," and that Southwestern Bell was not requesting such a correction but instead was asking to redetermine the merits of the award, something prohibited under Rule 40. The Arbitrator disagreed, and in February 2018, he rescinded the original award and issued a new Award denying the grievance and finding that "no contractual violation occurred." Dkt. No. 22-44 at 2 (February Award). Specifically, the Arbitrator determined that a "technical error was committed by the Arbitrator's misjudgment on the application of Union Exhibit 4, and the Arbitrator is obliged to correct the noted mistake." *Id.* at 1.

The Union thereafter filed this lawsuit. It brings the case under the Labor-Management Relations Act of 1947, seeking to vacate the February Award and reinstate the January Award. The Union argues that the February Award

> contravenes the prohibition on reconsideration of decisions on the merits enshrined in AAA Rule 40 and expressly incorporated into the labor agreement, because the arbitrator's February 23rd decision is not a mere technical correction of the prior award as asserted by the arbitrator.

4

Dkt. No. 16 at 9. The Defendants have counterclaimed, and ask the Court to enforce the February Award. They contend the February Award is a final and binding award which "draws its essence from the parties' CBA and therefore should be enforced and confirmed in its entirety." Dkt. No. 11 at p. 6.

The Parties have now filed cross-motions for summary judgment, each asking that the Court adopt their argument and enter judgment in their favor pursuant to Rule 56.

## II. STANDARD OF REVIEW

**A. Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004).

The Court must view the summary judgment evidence in the light most favorable to the non-movant. *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221 (5th Cir. 2011). When there are

5

cross-motions for summary judgment, the Court must examine "each party's motion independently" and view "the evidence and inferences in the light most favorable to the nonmoving party." *JP Morgan Chase Bank, N.A. v. Data Treasury Corp.*, 823 F.3d 1006, 1011 (5th Cir. 2016). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Id.*

**B.     Judicial Review of Arbitration Awards**

When a party to an arbitration timely applies for an order confirming an award, the Federal Arbitration Act provides that "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in § 10 and § 11." 9 U.S.C. § 9. A court may only vacate an arbitration award where: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption among the arbitrators; (3) the arbitrators were "guilty of any misbehavior" that prejudiced a party's rights; or (4) the arbitrators exceeded their powers. *Id.* at § 10(a). Because the FAA does not include an additional ground to vacate an arbitration award based on mere errors in interpretation or application of the law, or mistakes in fact-finding, courts must not "conduct a review of an arbitrator's decision on the merits." *Householder Grp. v. Caughran*, 354 F. App'x 848, 851 (5th Cir. 2009) (citations omitted); see also *Citigroup Glob. Mkts., Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009) (holding that there are no longer non-statutory grounds for vacating arbitration awards). Under the FAA, an arbitrator's decision will be vacated "only in very unusual circumstances." *Rainier DSC 1, L.L.C. v. Rainier Capital Mgmt., L.P.*, 828 F.3d 362, 364 (5th Cir. 2016) (quoting *First Options of Chic., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)).

Given the strong federal policy favoring arbitration, "[j]udicial review of an arbitration award is extraordinarily narrow." *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 472 (5th Cir. 2012). Courts consistently describe the scope of judicial review of arbitration awards as "among the narrowest known to the law." *E.g., Pfeifle v. Chemoil Corp.*, 73 F. App'x 720, 723 (5th Cir. 2003). The arbitrator's decision must therefore be given a high level of deference, and "[t]he court must resolve any doubts or uncertainties in favor of upholding the award." *Brabham v. A. G. Edwards & Sons Inc.*, 376 F.3d 377, 385 n.9 (5th Cir. 2004). *See also*, *Delek Ref., Ltd. v. Local 202*, 891 F.3d 566, 570 (5th Cir. 2018); *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987). "A reviewing court examining whether arbitrators exceeded their powers must resolve all doubts in favor of arbitration." *Rain CII*, 674 F.3d at 472. The party moving to vacate an arbitration award has the burden of proof. *Weber v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 455 F. Supp. 2d 545, 549 (N.D. Tex. 2006).

### III. ANALYSIS

As discussed above, the Arbitrator's First Award found that Southwestern Bell violated the CBA after he mistakenly relied on Union Exhibit 4, which summarized an agreement reached between AT&T's Midwest Region (not Southwestern Bell) and a different Communications Workers of America district, contained in a different CBA that addressed express limitations *those parties* reached on their Premises Technicians' ability to perform fiber splicing work. Because that CBA involved different parties, it was irrelevant to Southwestern Bell's collective bargaining history and to the language the parties reached in 2009 which permitted the Company to assign Premises Technicians "*all work* from and including the Serving Terminal up to and including the customer premises for IP enabled products and services." Dkt. No. 22-14.

AAA Labor Arbitration Rule 40 which is incorporated in the Parties' CBA, provides the following:

> Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, technical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other parties shall be given 10 days to respond to the request. The arbitrator shall dispose of the request within 20 days after transmittal by the AAA to the arbitrator of the request and any response thereto. If applicable law requires a different procedural time frame, that procedure shall be followed.

Dkt. No. 22-34 at 17 (Rule 40). Pursuant to Rule 40, Southwestern Bell filed a timely request with the Arbitrator "to reconsider his award because it was based on a mistaken exhibit and to find no violation of the Agreement, as he stated that he would at the top of page 10 of the Award." Dkt. 22-39 at 4. In support of its request, Southwestern Bell argued the following:

> At page 9 of the Award, the Arbitrator states that "Union Exhibit 4 reveals the established method in which the parties utilize to make changes to a Premises Technician's job duties. . . . Thus, Management's attempt to include the subject changes, which are enumerated in Union Exhibit 4, into the Settlement Agreement, did not coincide with the practice utilized by both parties concerning changes to the Premises Technician job duties."
>
> Relying on that exhibit, the Arbitrator concludes on pages 9-10 of the Award that, "Absent a clear practice that the parties have chosen to abide by and despite the nature of the proposed changes and the additional requirement associated with the proposed changes, I would be inclined to find no violation of the Agreement occurred."
>
> Union Exhibit 4 which the Arbitrator relied on above did not represent the parties' established method to make changes to the Premises Technician's job duties. That exhibit, as the transcript shows, was a different union's summary of a tentative agreement with a different employer and different CWA district involving a different bargaining unit having a different collective bargaining agreement. The Company understands how, given the short discussion about this exhibit at the hearing, the Arbitrator may have been confused as to the nature of this exhibit, but it clearly has no application to or shows any bargaining method or practice between the parties to the instant arbitration as stated in the Award on page 9.

> The actual established method that the parties used in this case to allow Premises Technicians to splice fiber was discussed in 2009 bargaining, and those bargaining proposals were introduced into evidence. The parties were clearly aware during 2009 bargaining that Premises Technicians would splice fiber at the serving terminal, and the Company declined a bargaining demand by the union which would have limited the scope of fiber splicing in the serving terminal. Consequently, the parties here did not agree to any limitation to fiber splicing as the other parties did in Union Exhibit 4.

Dkt. 22-39 at1-2.

The Arbitrator agreed with Southwestern Bell. He stated that he had committed a "technical error" under Rule 40 "by the Arbitrator's misjudgment on the application of Union Exhibit 4, and the argument made thereon." Dkt. No. 22-44 at 1. Because he was "obliged to correct the noted mistake," the Arbitrator determined that he was not redetermining the merits in contravention of Rule 40. *Id.* Accordingly, the Arbitrator rescinded the previous Award and ruled as follows:

> With an incorrect reliance on Union Exhibit 4, your Arbitrator must find that no such past practice existed with these subject parties and their particular Collective Bargaining Agreement. At the same time, the Record reflects that in the parties' 2009 and 2013 Settlement Agreements, Appendix J was renewed and amended to allow Company to assign Premises Technicians "all work from and including the serving terminal . . . all work at or in the customer premises for all services regardless of the technology or equipment. . . ." In that connection such is thrust [sic] of my finding, "absent a clear practice that the parties have chosen to abide by, and despite the nature of the proposed changes, and the additional requirements associated with the proposed changes, I would be inclined to find that no violation of the Agreement occurred." Therefore, as previously stated herein, due to the fact that there is no binding practice, and in light of your Arbitrator's misapplication of Union Exhibit 4, it must be held that Company did not violate the Agreement."

*Id.* at 2.

The Union argues that this award should be vacated because the Arbitrator was "outside of his jurisdiction" when he issued it. It contends the January Award "disposed of the issue before him and was final and binding on the parties." Dkt. No. 24 at 14. This argument was presented to the Arbitrator, and he concluded that Rule 40 did in fact allow him to correct the mistake he had made.

9

The Union contends that the Arbitrator went beyond the grant of authority in Rule 40, because his decision did not merely correct a technical error but instead reconsidered the merits of the claim. The Union argues that this violated Rule 40 and the doctrine of *functus officio*.[2] The Union's argument thus raises the question of whether the Court is the final arbiter of the power of the Arbitrator under Rule 40, or whether it must defer to the Arbitrator's decision that he was properly exercising his Rule 40 power when he issued the February Award.

In general, "an arbitrator can reconsider a claim before giving a final disposition as to the entire case." *Eggelston v. Marshall Durbin Food Corp.*, 2016 WL 4247823, at *6 (N.D. Ala. Aug. 11, 2016), *appeal dismissed*, 2016 WL 9774537 (11th Cir. 2016). Further, courts have held that "as a general rule, an arbitrator has authority to issue a supplemental award clarifying or explaining an original award." *ARCH Dev. Corp. v. Biomet, Inc.*, 2003 WL 21697742, at *5 (N.D. Ill. July 30, 2003); s*ee also*, *Eggelston*, 2016 WL 4247823 at *6 ("Rule 40 itself establishes that a decision is open to revision."). It is significant here that the parties agreed to be bound by the AAA Rules. Those rules include Rule 47, which provides that "[t]he arbitrator shall interpret and apply these rules insofar as they relate to the arbitrator's powers and duties." Dkt No. 22-34 at 19. In deciding

---

[2]The doctrine of "*functus officio*" states that an officer is "without further authority or legal competence because the duties and functions of the original commission have been fully accomplished." *Martel v. Ensco Offshore Co.*, 449 F. App'x 351, 354 (5th Cir. 2011) (quoting Black's Law Dictionary 743 (9th ed. 2009)). "Once a court of competent jurisdiction has confirmed that an arbitration decision is unambiguous and binding on the parties, the arbitrator becomes *functus officio* with respect to that portion of the arbitration award and lacks authority to reconsider those aspects of his decision that are unambiguous and binding." *Id.* (quoting *Brown v. Witco Corp.*, 340 F.3d 209, 221 (5th Cir. 2003)). There are three recognized exceptions to the *functus officio* doctrine: "An arbitrator can (1) correct a mistake which is apparent on the face of his award; (2) decide an issue which has been submitted but which has not been completely adjudicated by the original award; or (3) clarify or construe an arbitration award that seems complete but proves to be ambiguous in its scope and implementation." *Id.* at 219.

that his February Award was within the scope of his powers under Rule 40, the Arbitrator was exercising the authority Rule 47 granted him to "interpret and apply" Rule 40, and decide whether the error he made by relying on Union Exhibit 4 fit within the scope of Rule 40. The Supreme Court has stated that "procedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, (2002) (internal quotations omitted). Applied to this case, this means "it is not within the province of this Court to second-guess an arbitrator's decision as to procedural matters." *Eggelston*, 2016 WL 4247823 at *6.

A review of *Eggelston* is instructive here. There, the court also rejected the employer's argument that the arbitrator exceeded his authority by modifying an arbitration award. After the first arbitrator in the employment arbitration dispute had issued a summary judgment order dismissing the employee's overtime and retaliation claims, the employee filed a motion for clarification, pointing out that he had raised fact issues with regard to his retaliation claims. While the motion for clarification was pending, a new arbitrator was appointed. The new arbitrator found that the employee had met his burden of proof and ruled in favor of the employee on the FLSA claims. The arbitrator ruled that she was not redetermining the merits because the first award was not final, as not all issues had been ruled on and the employee had filed a motion for clarification of the previous summary judgment order. When the employer sought to vacate the award in the district court, it held that the arbitrator did not exceed her authority:

> Even assuming that the Court agrees with Marshall Durbin's construction of Rule 40, it is not within the province of this Court to second-guess an arbitrator's decision as to procedural matters. Arbitrator Baker's determination that she could revisit the merits of Eggelston's FLSA claims, even if error, is an arguable construction of the Rules. She did not ignore Rule 40 altogether, but considered Marshall Durbin's arguments and determined that Rule 40 did not apply, as there was no final "award"

11

> to bar her reconsideration of the FLSA claims. Considering that the Rules are the procedures both parties agreed to use in settling this dispute, Arbitrator Baker's construction cannot be disturbed by this Court. Because she was acting within her inherent authority in construing their provisions, she cannot be said to have exceeded her authority. If Marshall Durbin wishes to have such a strict construction of the rules, then its dispute lies with an arbitrator, not a judge.

*Id.* (internal citations omitted).

The Union urges the Court not to follow *Eggelston*, noting that it was criticized by the Eleventh Circuit in *International Brotherhood of Elec. Workers, Local Union 824 v. Verizon Florida, LLC,* 803 F.3d 1241 (11th Cir. 2015). But *IBEW Local No. 824* is distinguishable from both this case and *Eggelston*. In *IBEW Local No. 824*, after the arbitrator issued his first award sustaining the grievance with respect to two employees and denying it as to others, the company asked the arbitrator to reconsider the entire award. The arbitrator agreed, and found that he had exceeded his authority in the original award. He issued a substituted award which deleted his previous analysis and proceeded to deny the union's grievance as to all of the employees. The union filed suit to challenge the second award, and the Eleventh Circuit held that the arbitrator exceeded his authority when he revisited the merits of the first award. But unlike this case, the arbitrator in *IBEW Local No. 824* was not correcting a mistake, and was not relying on AAA Rule 40 to do so; rather, he relied on new arguments from the parties to redetermine the merits of the first award.

Moreover, *IBEW Local No. 824* conflicts with Fifth Circuit and Western District of Texas precedent. For example, in the Fifth Circuit case *Rain CII Carbon, LLC v. ConocoPhillips*, the dispute related to which pricing formula to use under a contract. The contract tasked the arbitrator with choosing one party's submission over the other. 674 F.3d at 472 After the arbitrator issued an award, Rain requested a clarification under AAA Rule 46 (the previous version of Rule 40) because it viewed two paragraphs copied from Conoco's draft award as inconsistent with the rest of

the award. *Id.* The arbitrator "granted Rain's motion, identified the 'inadvertently included sentences' as clerical errors, and removed them from the final award." *Id.* at 471. On appeal, Conoco argued that the arbitrator's "inclusion of the paragraphs [from Conoco's draft award] was not a clerical error" and the arbitrator had redetermined the merits in his corrected award. *Id.* at 473. The Fifth Circuit flatly rejected this argument: "Conoco has cited to no case holding that an arbitrator's correction of an award for clerical errors was not genuine or credible. Given the considerable deference afforded arbitration awards, Conoco's argument that the arbitrator exceeded his powers . . . must fail." *Id.*

Similarly, in *AP Seating USA, LLC v. Circuit of the Americas LLC*, 2014 3420805 at *3 (W.D. Tex. July 10, 2014), Judge Sparks upheld an arbitration panel's modified award, finding that it was not an impermissible redetermination of the merits. The arbitration panel had initially issued an award in favor of COTA, expressly incorporated a damage model submitted by COTA, and taxed all arbitration costs against AP Seating. *Id.* at * 1. The award included language that "COTA has acquired an undivided interest of 47% in the Premium Seats . . . [and] AP Seating continues to own . . . a 53% undivided interest in the Premium Seats." *Id.* The parties were unable to agree on how to interpret this aspect of the award. The parties agreed to request a clarification from the arbitration panel, and both submitted requests asking the panel to clarify the parties' respective ownership interests in the seats. *Id.* The panel then issued a clarification or modification of the award signed by two of the three arbitrators. The modified award stated "COTA has . . .validly acquired a 47% interest in the equipment and validly exercised its option to purchase the remaining 53% . . . as determined in the [Original] Award through the adoption of Damage Model 3." *Id.* The modified award stated the language awarding a 53% interest in the seats to AP Seating was included "as a

result of a clerical and administrative error," for which the arbitrators apologized, and was struck from the award. *Id.* The third arbitrator dissented, denying the alleged error was clerical and calling the modified award an impermissible re-adjudication of the merits of the dispute. Relying on the dissent, AP Seating challenged the award, and argued that the modified award violated AAA Rule 46 by redetermining the merits. Judge Sparks disagreed:

> AP Seating insists "the best evidence possible to show that a correction of an award for clerical errors was not genuine or credible" is the third arbitrator's dissent. *Id.* at 5. But following this logic, the best evidence to the contrary is the arbitration panel's "majority opinion," in which two of the three arbitrators deem the modification to be a correction of a clerical error. As in Longhorn baseball and the World Cup, two beats one every day of the week. Even if this Court had doubts as to what the arbitration panel intended, any such doubts must be resolved in favor of the arbitration. Given the extraordinary level of deference afforded to arbitration awards, a majority opinion declaring certain language in an award to be a clerical error must be upheld over the voice of a lone dissenter, at least absent additional, compelling evidence suggesting the majority opinion was somehow improper.

*Id.* at *3 (internal citations omitted).

Finally, the Union's narrow reading of Rule 40, prohibiting an arbitrator from correcting what was undisputedly a material mistake, would lead to absurd results. As one circuit court has reasoned:

> If the "resignation" of the arbitrator from the case, in accordance with the doctrine of *functus officio*, disables him from considering a motion for reconsideration, clarification, amendment, or other modification, there is nobody to whom the parties can turn. The result would be a gap in the system of arbitral justice that would make very little sense that we can see.
>
> In recognition of the fallibility of earthly lawgivers, every court, and every administrative agency that exercises adjudicative authority, has been understood to have . . . the inherent power to reconsider its decisions within a reasonable time. Arbitrators are no more infallible than judges. They make mistakes and overlook contingencies and leave much to implication and assumption—as the present case illustrates.

*Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, AFL-CIO, CLC, Local 182B v. Excelsior Foundry Co.*, 56 F.3d 844, 847 (7th Cir. 1995). The Fifth Circuit has similarly concluded

that an arbitrator has the power to reform an award "where the award on its face is contrary to a fact so well known as to be subject to judicial notice," explaining that because the award was contrary to "a well-known, undisputed fact contained in a joint exhibit," it was appropriate for the arbitrator to correct that error. *Martel v. Ensco Offshore Company*, 449 F. App'x 351, 354-355 (5th Cir. 2011).[3] The same is the case here.

## IV. RECOMMENDATION

In light of the deference courts are required to pay to parties' agreements to arbitrate, and the decisions of the arbitrators they empower to resolve their disputes, the Court concludes that the Arbitrator's application of AAA Rule 40 did not exceed his powers, and the February Award is final and binding. The undersigned therefore **RECOMMENDS** that the Defendants' Motion for Summary Judgment on Plaintiff's Complaint and Defendants' Counterclaim (Dkt. No. 23) be **GRANTED** and Plaintiff's Motion for Summary Judgment (Dkt. No. 24) be **DENIED**, and that a final judgment be entered (1) denying all relief to the Union on its complaint, and (2) awarding Southwestern Bell relief on its counterclaim seeking to enforce the February Award.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within

---

[3] *See also Spector v. Torenberg*, 852 F. Supp. 201, 207 (S.D.N.Y. 1994) ("a rigid refusal to recognize the October Award would be contrary to both the demonstrable flexibility of New York law in this area and the judicial interest in promoting the arbitral goals of efficiency and parsimony").

fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 5th day of April, 2019.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE