# United States Court of Appeals
**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

April 20, 2020

Ms. Jeannette Clack
Western District of Texas, Austin
United States District Court
501 W. 5th Street
Austin, TX 78701-0000

    No. 19-50686   CWA v. Southwestern Bell Telephone Co, et al
                         USDC No. 1:18-CV-271

Dear Ms. Clack,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

                        Sincerely,

                        LYLE W. CAYCE, Clerk

                        By: _____
                        Casey A. Sullivan, Deputy Clerk
                        504-310-7642

cc:
    Mr. Christian Bourgeacq
    Mr. Matthew G. Holder



IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**Certified as a true copy and issued as the mandate on Apr 20, 2020**

**Attest:** *Lyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**

No. 19-50686

D.C. Docket No. 1:18-CV-271

United States Court of Appeals
Fifth Circuit
**FILED**
March 27, 2020
Lyle W. Cayce
Clerk

COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO,

    Plaintiff - Appellant

v.

SOUTHWESTERN BELL TELEPHONE COMPANY; AT&T SERVICES, INCORPORATED; SBC ADVANCED SOLUTIONS, INCORPORATED; AT&T OPERATIONS, INCORPORATED; AT&T DATACOMM, INCORPORATED; SBC TELECOM, INCORPORATED,

    Defendants - Appellees

Appeal from the United States District Court for the
Western District of Texas

Before BARKSDALE, HIGGINSON, and DUNCAN, Circuit Judges.

J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed.

IT IS FURTHER ORDERED that plaintiff-appellant pay to defendants-appellees the costs on appeal to be taxed by the Clerk of this Court.

REVISED April 1, 2020

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
March 27, 2020

Lyle W. Cayce
Clerk

No. 19-50686

COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO,

    Plaintiff - Appellant

v.

SOUTHWESTERN BELL TELEPHONE COMPANY; AT&T SERVICES, INCORPORATED; SBC ADVANCED SOLUTIONS, INCORPORATED; AT&T OPERATIONS, INCORPORATED; AT&T DATACOMM, INCORPORATED; SBC TELECOM, INCORPORATED,

    Defendants - Appellees

Appeal from the United States District Court for the
Western District of Texas

Before BARKSDALE, HIGGINSON, and DUNCAN, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

    This appeal asks the court to determine the limits of an arbitrator's powers to reconsider a previously issued decision. Communications Workers of America, AFL-CIO ("CWA"), a union representing employees of Southwestern Bell Telephone Company ("the Company"), filed a grievance against the Company in May 2015. Though the arbitrator initially sided with CWA and found that the Company had violated the parties' collective bargaining

Case: 19-50686 Document: 00515387761 Page: 2 Date Filed: 04/20/2020
Case 1:18-cv-00271-LY Document 38 Filed 04/20/20 Page 4 of 15

No. 19-50686

agreement ("CBA"), he later vacated his earlier decision and issued a modified decision. The district court upheld the arbitrator's actions, holding that his interpretation of his powers was consistent with the CBA.

Guided by the "extraordinarily narrow" standard of review that applies to our consideration of arbitration awards, *see Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 471–72 (5th Cir. 2012) (citation omitted), we AFFIRM.

I.

CWA and the Company are parties to a CBA. Under the terms of the CBA, the parties agreed to resolve all disputes by arbitration. The CBA provides that arbitrations "shall be conducted under the then obtaining rules of the Voluntary Labor Arbitration Tribunal of the American Arbitration Association"—also known as the AAA Rules. Decisions rendered by the arbitrator "shall be final, and the parties agree to be bound and to abide by" them.

In May 2015, CWA filed a grievance against the Company. It argued that the Company had violated the CBA by assigning cable-splicing activities to Premises Technicians ("Prem Techs"), a group of workers employed by the Company. CWA argued that these activities had not been explicitly assigned to Prem Techs in either the parties' settlement agreements or in the position's official job description. By contrast, the official job descriptions for Customer Service Technicians and Cable Splicing Technicians, two other groups of Company employees, included "[s]plic[ing] wires" on the list of "essential functions" for those roles.

The Company argued that its actions complied with the CBA and with the parties' mutual understandings. It observed that a settlement agreement reached by the parties during their 2009 collective bargaining process granted the Company the right to "[a]ssign Premises Technicians *all work* from and

2

including the Serving Terminal up to and including the customer premises for IP enabled products and services."[1] In 2013, the parties reached a new settlement agreement that retained the same "all work" language. Because this expansive language encompassed cable splicing activities, the Company argued that it had not strayed from the CBA when it assigned these tasks to Prem Techs.

On October 18, 2017, Samuel Nicholas, Jr. ("the arbitrator"), presided over a hearing to resolve this dispute. Over the Company's objections, the arbitrator allowed CWA to introduce Union Exhibit 4 into evidence. The exhibit detailed specific agreements between AT&T Midwest and a CWA bargaining unit located in the Midwest—District 4. Union Exhibit 4 revealed that fusion splicing had been specifically excluded from the list of tasks assigned to Prem Techs in District 4.[2] During the hearing, Charlie Torres, the President of the Union, admitted that there was no similar document excluding splicing tasks from Prem Techs' responsibilities in District 6—the district at issue in this arbitration.

The arbitrator issued his first decision on January 19, 2018 ("the January award"). He sustained CWA's grievance and held that the Company had violated the parties' CBA by assigning cable-splicing tasks to Prem Techs. The arbitrator explained that the broad "all work" language in the Settlement Agreement supported the Company's argument that it was entitled to assign these tasks to Prem Techs. Nevertheless, he concluded that the "past practice" of the parties compelled a different conclusion. He found that "Union Exhibit

---

[1] The "Serving Terminal" is a green pedestal or cylinder located in a customer's yard.

[2] The parties do not explain the distinction, if any, between "fusion splicing" and the cable splicing at issue in this arbitration. However, according to CWA, the fact that Union Exhibit 4 specifically identifies "fusion splicing" demonstrates that the parties knew how to negotiate regarding specific job tasks, suggesting that their failure to do so here demonstrates that they did not intend for these activities to be assigned to Prem Techs.

Case: 19-50686   Document: 00515387761   Page: 4   Date Filed: 04/20/2020
Case 1:18-cv-00271-LY   Document 38   Filed 04/20/20   Page 6 of 15

No. 19-50686

4 reveals the established method . . . which the parties utilize to make changes to a Premises Technician's job duties." Because the parties had never formally negotiated to have cable splicing added to the job duties of Prem Techs, the arbitrator concluded that the Company violated the CBA and the parties' agreed-upon practice when it assigned this work. Even though he found a violation, however, the arbitrator noted that he "would be inclined to find that no violation of the Agreement occurred" if not for his reliance on Union Exhibit 4, which demonstrated the "clear practice that the parties have chosen to abide by." He ordered the parties to negotiate any further changes to the job description for Prem Techs, and "retain[ed] jurisdiction [over] the award."

A few days later, the Company filed a motion for reconsideration. It argued that the arbitrator's reliance on Union Exhibit 4 was misplaced because that exhibit "was a different union's summary of a . . . different bargaining unit having a different collective bargaining agreement." Given the arbitrator's explicit statement that he would have found in favor of the Company if not for the "clear practice" established by Union Exhibit 4, the Company argued that the arbitrator should reconsider his earlier decision.

Though the Union argued that the Company's requested relief was outside the scope of the arbitrator's powers, the arbitrator agreed with the Company and issued a new decision on February 23, 2018 ("the February award"). In the February award, the arbitrator explained that he had incorrectly relied upon Union Exhibit 4 in reaching his earlier decision. Consistent with his reasoning in the January award, he found that he was now compelled to conclude that no violation had occurred, and he sided with the Company. The arbitrator held that the AAA rules empowered him to make this modification because they permitted him to correct a "clerical, typographical, technical, or computational error[]" contained in an earlier award. Though the Union observed that AAA Rule 40 prohibited an arbitrator from modifying his

4

Case: 19-50686    Document: 00515387761    Page: 5    Date Filed: 04/20/2020
Case 1:18-cv-00271-LY   Document 38   Filed 04/20/20   Page 7 of 15

No. 19-50686

award in a manner that "re-determine[d] the merits of a[] claim already decided," the arbitrator classified his earlier reliance on Union Exhibit 4 as a "technical error" that could be corrected without violating this prohibition. Thus, he found that his actions were supported by the rules and by the parties' CBA, and he found in favor of the Company.

CWA filed suit to enforce the January award and vacate the February award. The Company filed a counterclaim seeking enforcement of the February award, and the parties cross-moved for summary judgment. The district court referred the motions to a magistrate judge, who issued a Report and Recommendation (R&R) advising the district court to grant summary judgment to the Company. The district court adopted the R&R over CWA's objections and confirmed the February award. This appeal followed.

## II.

"We review the district court's confirmation of an arbitrator's award *de novo*, but our review of the arbitrator's award itself . . . is very deferential." *YPF S.A. v. Apache Overseas, Inc.*, 924 F.3d 815, 819 (5th Cir. 2019) (internal quotation marks and citation omitted). This standard of review has been described as "extraordinarily narrow," *Rain CII*, 674 F.3d at 471–72 (citation omitted), and "severely limited," *Manville Forest Prods. Corp. v. United Paperworkers Int'l Union, AFL-CIO*, 831 F.2d 72, 74 (5th Cir. 1987)—one of the most deferential standards "known to the law," *Cont'l Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 555 F.3d 399, 405 (5th Cir. 2009) (citation omitted). Where an arbitration award stems from a labor dispute, judicial review is "particularly constrained." *Teamsters Local No. 5 v. Formosa Plastics Corp.*, 363 F.3d 368, 371 (5th Cir. 2004); *see also United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37 (1987) (observing that the Labor-Management Relations Act "reflect[s] a decided preference for private settlement of labor disputes without the intervention of government").

Case: 19-50686　　Document: 00515387761　　Page: 6　　Date Filed: 04/20/2020
Case 1:18-cv-00271-LY   Document 38   Filed 04/20/20   Page 8 of 15

No. 19-50686

Courts are not permitted "to reconsider the merits of an [arbitration] award." *Misco*, 484 U.S. at 36. Instead, we must affirm an arbitral award "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Id.* at 38. Even if an arbitrator committed serious error, we may not reverse the arbitrator's judgment if the decision "draw[s] its essence from the contract." *Id.*; *see also Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 572 (2013) (noting that "convincing a court of an arbitrator's error—even his grave error—is not enough" to justify vacatur).

### III.

This uniquely deferential standard of review compels us to affirm the district court and uphold the arbitrator's February award.

CWA argues that the arbitrator exceeded his authority when he rescinded the January award and issued the February award. An arbitrator exceeds his authority when he "ignore[s] the plain language of a contract." *Delek Refining, Ltd. v. Local 202, United Steel*, 891 F.3d 566, 570 (5th Cir. 2018) (citations omitted); *see id.* (distinguishing between an arbitrator's role in "applying or interpreting the agreement" and "rewriting it"). "[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). To determine whether an arbitrator exceeded his authority, courts apply the "essence test," evaluating whether the arbitration award "ha[s] a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement." *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1325 (5th Cir. 1994) (citation omitted).

The arbitrator's decision is consistent with "our expansive reading of the 'essence' test." *Id.* When he issued the February award, the arbitrator relied

Case: 19-50686    Document: 00515387761    Page: 7    Date Filed: 04/20/2020
Case 1:18-cv-00271-LY   Document 38   Filed 04/20/20   Page 9 of 15

No. 19-50686

upon the language in the parties' agreement, situating his decision and his interpretation of his authority within the rules that governed their dispute resolution process. Specifically, he held that Rule 40 of the AAA rules permitted him to reconsider his previous decision and issue a substitute opinion. In their CBA, the parties agreed that they would be bound by the AAA rules. When a CBA explicitly refers to the AAA rules, those rules become "incorporated" into the agreement between the parties. *See Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012).

Rule 40 permits an arbitrator to modify his award under certain circumstances. It provides, in relevant part:

> Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, technical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided.

The arbitrator found that he had committed a "technical error" when he relied upon Union Exhibit 4, and he therefore held that Rule 40 allowed him to vacate the January award and issue the February award. Though he did not explain why his error was "technical" and why it did not violate Rule 40's prohibition against "redetermin[ing] the merits" of a dispute, his interpretation is entitled to deference. Rule 47 of the AAA rules authorizes an arbitrator to "interpret and apply [the AAA] rules insofar as they relate to the arbitrator's powers and duties." This rule binds the parties to the arbitrator's interpretation as long as it is "within reasonable limits." *See Koch Oil, S.A. v. Transocean Gulf Oil Co.*, 751 F.2d 551, 554 (2d Cir. 1985). Indeed, even where "reasonable judges and arbitrators could interpret the AAA rules differently from the way that [the arbitrator] did in this case," that is "beside the point." *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 645 (9th Cir. 2010) (citation omitted); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l*

Case: 19-50686 Document: 00515387761 Page: 8 Date Filed: 04/20/2020
Case 1:18-cv-00271-LY Document 38 Filed 04/20/20 Page 10 of 15

No. 19-50686

*Corp.*, 559 U.S. 662, 685 (2010) ("[P]rocedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide." (internal quotation marks and citation omitted)).

The terms "technical" and "merits" are not defined in the AAA Rules or in the CBA. We have held that it "is the arbitrator's charge" to "explicat[e] broad CBA terms . . . when left undefined by [the] contract." *Albemarle Corp. v. United Steel Workers ex rel. AOWU Local 103*, 703 F.3d 821, 826 (5th Cir. 2013) (citation omitted). When evaluating whether an arbitrator's interpretation of a CBA withstands scrutiny, it is not our role to determine whether the arbitrator's interpretation is correct. "[T]he sole question [before] us is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health*, 569 U.S. at 569. Though an arbitrator's decision must be vacated if it is completely disconnected from the language of a CBA, an award may not be overturned because the arbitrator's reasoning is lacking. *See id.* at 571. Indeed, "among the powers of an arbitrator is the power to interpret the written word, and this implies the power to err; an award need not be correct to be enforceable." *Trustmark Ins. Co. v. John Hancock Life Ins. Co. (U.S.A.)*, 631 F.3d 869, 874 (7th Cir. 2011) (citation omitted); *see also Misco*, 484 U.S. at 38 ("Courts . . . do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower *courts*." (emphasis added)).

Here, the arbitrator's determination that he had committed a "technical" error was an arguable interpretation of the contract. Though the arbitrator did not explain his reasoning, "[i]t has long been settled that arbitrators are not required to disclose or explain the reasons underlying an award." *Antwine v. Prudential Bache Sec., Inc.*, 899 F.2d 410, 412 (5th Cir. 1990); *see also United Steelworkers of Am.*, 363 U.S. at 598. We can discern a possible rationale from

Case: 19-50686    Document: 00515387761    Page: 9    Date Filed: 04/20/2020
Case 1:18-cv-00271-LY   Document 38   Filed 04/20/20   Page 11 of 15

No. 19-50686

the arbitrator's actions, demonstrating that his decision "must stand." *See Oxford Health*, 569 U.S. at 569 ("[A]n arbitral decision even arguably construing or applying the contract must stand, regardless of a court's views of its (de)merits." (internal quotation marks and citation omitted)). As the Company argues, the arbitrator's correction did not alter the "merits framework from his first award." The February award was consistent with the arbitrator's earlier reasoning, in which he had stated that he would have found in favor of the Company if not for his reliance on Union Exhibit 4. When the arbitrator concluded that it was technically erroneous for him to rely on Union Exhibit 4, his February award retained the same framework as his earlier award. Given the arbitrator's broad powers under the AAA rules, we cannot say that this interpretation of the undefined terms in the CBA "was so unfounded in reason and fact, so unconnected with the wording and purpose of the collective bargaining agreement as to manifest an infidelity to the obligation of an arbitrator." *Executone*, 26 F.3d at 1325 (internal quotation marks and citation omitted).

To support its position, CWA relies upon a set of cases in which we have vacated an arbitrator's decision because it ignored a clear term in a contract—a defect that does not exist here. *See, e.g.*, *Hous. Lighting & Power Co. v. Int'l Bhd. of Elec. Workers, Local Union No. 66*, 71 F.3d 179, 184 (5th Cir. 1995) (holding that arbitrator exceeded his authority where he conducted de novo review of employee's qualifications, even though this was prohibited by the CBA); *Delta Queen Steamboat Co. v. District 2 Marine Eng'rs Beneficial Assoc.*, 889 F.2d 599, 604 (5th Cir. 1989) (holding that arbitrator exceeded his authority where he ignored the definition of "proper cause" for employee discipline in the parties' CBA). Unlike these cases, the arbitrator here did not ignore the language of Rule 40 or any other relevant term in the parties'

9

Case: 19-50686 Document: 00515387761 Page: 10 Date Filed: 04/20/2020
Case 1:18-cv-00271-LY Document 38 Filed 04/20/20 Page 12 of 15

No. 19-50686

agreement.³ To the contrary, he cited Rule 40, classified his error as a "technical" one capable of correction, and held that his correction did not violate Rule 40, notwithstanding the Union's argument that he was "re-determin[ing] the merits" of CWA's claim against the Company. Even if the arbitrator made a mistake in reaching his conclusion, "[t]he potential for . . . mistakes is the price of agreeing to arbitration. . . . The arbitrator's construction holds, however good, bad, or ugly." *Oxford Health*, 569 U.S. at 572–73; *see also Manville*, 831 F.2d at 74 ("The parties bargained for an arbitrator who would determine facts and interpret the contract; there is no injustice in holding them to this bargain." (citation omitted)).

This conclusion is further supported by our decision in *Rain CII Carbon, LLC v. Conoco-Phillips Company*. In that case, the arbitrator initially awarded a judgment of nearly $18 million to Rain, a purchaser of products sold by Conoco. 674 F.3d at 471. However, the arbitrator's award also included two errant sentences that complicated this result, suggesting that Rain owed money to Conoco, and that there was additional interest—exceeding $200,000—that Conoco owed to Rain. *See id.* The combination of these inconsistent statements led to uncertainty regarding the final award. *See id.* After Rain filed a motion for clarification, the arbitrator classified the inclusion

---

³ CWA argues that the arbitrator's actions ignored the "finality" provision in the parties' CBA and the common law doctrine of functus officio. This argument misapprehends the purpose of Rule 40. While it is true that the doctrine of functus officio "bars [the] arbitrator from revisiting the merits of an award once the award has been issued," *Brown v. Witco Corp.*, 340 F.3d 209, 218 (5th Cir. 2003 (citation omitted)), Rule 40 "essentially codifies the common law doctrine of *functus officio*," *Int'l Bhd. of Elec. Workers, Local Union 824 v. Verizon Fla., LLC*, 803 F.3d 1241, 1248 (11th Cir. 2015) (citation omitted). Though the CBA provided that the decision of an arbitrator "shall be final," the CBA also authorized the arbitrator to reconsider his decision as long as it complied with Rule 40. Given the interlocking nature of these provisions, CWA's argument that the arbitrator violated the doctrine is a restatement of its argument that the arbitrator violated Rule 40—not an additional basis for relief. Because the arbitrator did not ignore Rule 40 in issuing his decision, he also did not ignore the CBA's finality provision or the functus officio doctrine.

10

Case: 19-50686 Document: 00515387761 Page: 11 Date Filed: 04/20/2020
Case 1:18-cv-00271-LY Document 38 Filed 04/20/20 Page 13 of 15

No. 19-50686

of these sentences as a "clerical error[]." *Id.* The corrected award retained the nearly $18 million judgment but removed any additional information regarding interest or off-set fees. *Id.*

Like the Company, Conoco objected to the arbitrator's interpretation of his authority under the parties' CBA. It argued that the initial inclusion of those two errant sentences was actually intentional and "not a clerical error." *See id.* at 473. We disagreed and affirmed the district court's confirmation of the arbitrator's second award. *See id.* at 474. We held that the arbitrator was empowered to remove these sentences under the AAA Rules and rejected Conoco's attempt to classify the arbitrator's actions as improper. *Id.* at 473–74. In doing so, we observed that "Conoco has cited to no case holding that an arbitrator's correction of an award for clerical errors was not genuine or credible." *Id.* at 473.

*Rain CII* confirms that our deferential standard of review requires us to affirm an arbitrator's modified decision as long as the arbitrator's actions relied on a reasonable interpretation of the parties' agreement. Because the arbitrator in *Rain CII* classified his error as "clerical," that classification was entitled to deference unless there was reason to believe that the arbitrator's classification was "not genuine or credible." *Id.*; *see also Martel v. Ensco Offshore Co.*, 449 F. App'x 351, 352–56 (5th Cir. 2011) (affirming the correction of a clerical error that resulted in a damages award of $300,000, rather than $3,000,000); *AP Seating USA, LLC v. Circuit of the Ams. LLC*, No. A-14-CA-058-SS, 2014 WL 3420805, at *3 (W.D. Tex. July 10, 2014) ("Given the extraordinary level of deference afforded to arbitration awards, a[n] . . . opinion declaring certain language in an award to be a clerical error must be upheld . . . at least absent additional, compelling evidence suggesting the . . . opinion was somehow improper.").

Case: 19-50686   Document: 00515387761   Page: 12   Date Filed: 04/20/2020
Case 1:18-cv-00271-LY   Document 38   Filed 04/20/20   Page 14 of 15

No. 19-50686

CWA distinguishes *Rain CII* by arguing that the arbitrator's modification resulted in a minor numerical adjustment—not a new finding of liability. It is true that the arbitrator's actions in this case go a step beyond altering the amount of a money judgment, *see Martel*, 449 F. App'x at 354, or deleting stray text from an arbitration award, *see Rain CII*, 674 F.3d at 473. But we have never measured an arbitrator's powers by the magnitude of the change created by the arbitrator's corrections. Instead, our decision in *Rain CII* acknowledged the extreme deference afforded to an arbitrator's determination that his earlier error is capable of correction under the parties' agreement. *See id.* ("Conoco has cited to no case holding that an arbitrator's correction of an award for clerical errors was not genuine or credible."); *see also AP Seating*, 2014 WL 3420805, at *3 (upholding the arbitration panel's determination that it had committed a "clerical error" because of the "extraordinary level of deference afforded to arbitration awards"). The arbitrator's actions here—which stemmed from his interpretation of Rule 40—fit within this framework, and are therefore entitled to deference.

We are similarly unpersuaded by CWA's citation to two out-of-circuit cases: *International Brotherhood of Electrical Workers, Local Union 824 v. Verizon Fla., LLC*, 803 F.3d 1241 (11th Cir. 2015) [hereinafter *IBEW*], and *Lindland v. United States Wrestling Association, Inc.*, 227 F.3d 1000 (7th Cir. 2000). In those cases, the Eleventh Circuit and the Seventh Circuit refused to confirm modified arbitration decisions, holding that the arbitrators had exceeded their powers when they issued the new decisions. *IBEW*, 803 F.3d at 1251; *Lindland*, 227 F.3d at 1004. In *IBEW*, the arbitrator justified his actions under a Florida statute that authorized a court—not an arbitrator—to modify a previously-issued decision. *IBEW*, 803 F.3d at 1245, 1250 n.12. The arbitrator made no attempt to justify his actions under Rule 40 or to classify his earlier error as "technical" or "clerical." *Id.* Likewise, in *Lindland*, the

12

Case: 19-50686 Document: 00515387761 Page: 13 Date Filed: 04/20/2020
Case 1:18-cv-00271-LY Document 38 Filed 04/20/20 Page 15 of 15

No. 19-50686

Seventh Circuit held that an arbitrator who ignored "the contracts and other rules" that governed the parties' arbitration agreement exceeded his authority under the agreement. 227 F.3d at 1004 (citation omitted). The arbitrator in *Lindland* "thr[ew] aside [the AAA] rules" entirely, "implement[ing] his own brand of industrial justice" and "overstep[ping] his powers." *Id.* (internal quotation marks and citations omitted). The opinion noted that this was not an instance in which an arbitrator had erred in his interpretation of the parties' agreement; instead, the arbitrator in *Lindland* completely ignored the rules that guided the parties' decision-making process, and he therefore strayed from his obligations under the parties' CBA. *See id.* ("Arbitrator Campbell did not misinterpret [the AAA Rules]; he decided to ignore [them] utterly.").

In this case, the arbitrator grounded his modification within the rules that governed the parties' agreement. Though his interpretation of his powers is debatable, "the question for a judge is not whether the arbitrator construed the parties' contract correctly, but whether he construed it at all." *Oxford Health*, 569 U.S. at 573. Because the February award stemmed from a colorable interpretation of the parties' CBA, the arbitrator drew the "essence" of his decision from the parties' agreement, and he did not exceed his authority. *See Misco*, 484 U.S. at 38; *Executone*, 26 F.3d at 1325.

## IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED.